1

2

3

4

5

6

7

8

9

10

11                    UNITED STATES DISTRICT COURT

12                       EASTERN DISTRICT OF CALIFORNIA

13

14   SHELBY SIMPSON,                          CV F03 5029 AWI LJO P

15                    Plaintiff,

16        v.                                  FINDINGS AND RECOMMENDATIONS
                                              REGARDING MOTION FOR SUMMARY
17                                            JUDGMENT (Doc.  34, 35)

     CLAIRE SOLIS, et.  al.,
18
                     Defendants.
19   _____/

20
     **A.  PROCEDURAL HISTORY**
21
            Shelby Simpson ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis
22
     in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the instant action on
23
     January 9, 2003.  By order of February 18, 2003, the Court found that plaintiff's complaint stated
24
     a cognizable Eighth Amendment claim; however, the complaint did not contain any other
25
     cognizable claims for relief. (Court Doc. 7).  The Court granted plaintiff the opportunity of either
26
     filing an Amended Complaint or proceeding immediately on his Eighth Amendment claim only.
27
            On March 3, 2003, plaintiff notified the court of his intent to proceed immediately on his
28

                                               1

1   Eighth Amendment claim only and dismiss the remaining claims and defendants from the action.

2   (Court Doc. 8).  The Court issued Findings and Recommendations on July 8, 2003, that

3   plaintiff's due process and state law claims be dismissed from the action for failing to state a

4   claim for relief.  The Court further recommended that the action proceed only on plaintiff's

5   Eighth Amendment claim against defendants Solis, Edmond, Borbolla, and Rodriguez.  (Doc.

6   9.)  On August 29, 2003, the District Court adopted the Findings and Recommendations in full

7   and referred the case back to the Magistrate Judge for further proceedings.  (Doc. 13.)

8        Defendants filed the instant Motion for Summary Judgment on September 23, 2004.

9   (Docs. 34, 35.)  Plaintiff filed his Opposition to the Motion for Summary Judgment (hereinafter

10  "Opposition to Motion.") on November 10, 2004.  (Doc. 40.)  On November 18, 2004,

11  defendants filed a Reply to the Opposition.  (Doc. 41.)

12  **B.  PLAINTIFF'S ALLEGATIONS**

13       Plaintiff alleges that defendant Registered Nurses ("RN") Borbolla, Solis, Edmond and

14  Correctional Officer Rodriguez were deliberately indifferent to plaintiff's medical needs.

15  Specifically, plaintiff alleges that following surgery on his right ankle, it became infected and

16  Nurses Borbolla, Solis and Edmond failed to treat him for an infection resulting in further pain

17  and injury.   Plaintiff complains that defendant Rodriguez confiscated his crutches which were

18  medically necessary and authorized causing him to have to walk without assistance and resulting

19  in further pain and injury.

20  **C.  SUMMARY JUDGMENT STANDARD**

21       Summary judgment is appropriate when it is demonstrated that there exists no genuine

22  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

23  Fed. R. Civ.  P. 56(c).  Under summary judgment practice, the moving party

24            [A]lways bears the initial responsibility of informing the district
             court of the basis for its motion, and identifying those portions of
25           "the pleadings, depositions, answers to interrogatories, and
             admissions on file, together with the affidavits, if any," which it
26           believes demonstrate the absence of a genuine issue of material
             fact.
27

28  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

1   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

2   in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

3   file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and

4   upon motion, against a party who fails to make a showing sufficient to establish the existence of

5   an element essential to that party's case, and on which that party will bear the burden of proof at

6   trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the

7   nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a

8   circumstance, summary judgment should be granted, "so long as whatever is before the district

9   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

10  satisfied." Id. at 323.

11       If the moving party meets its initial responsibility, the burden then shifts to the opposing

12  party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

13  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

14  existence of this factual dispute, the opposing party may not rely upon the denials of its

15  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

16  admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

17  Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in

18  contention is material, i.e., a fact that might affect the outcome of the suit under the governing

19  law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific

20  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

21  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

22  party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

23       In the endeavor to establish the existence of a factual dispute, the opposing party need not

24  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

25  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

26  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

27  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

28  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

1   amendments).

2          In resolving the summary judgment motion, the court examines the pleadings,

3   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4   any.  Fed.R.Civ.P. 56(c).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477

5   U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

6   court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (*citing* <u>United</u>

7   <u>States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (*per curiam*).  Nevertheless, inferences are not

8   drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

9   which the inference may be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-

10  45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

11         Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

12  show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

13  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

14  issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

15  **D. STATEMENT OF UNDISPUTED FACTS[1]**

16  1.     On July 7, 2001, Shelby Simpson reported to the Communicable Infectious Diseases

17         ("CID") medical clinic for pain in his right ankle area.  (Complaint at 5:20-21; Borbolla

18         Declaration at 1:25-26; Raman Declaration at 1:21-25.)[2]

19  2.     After speaking with Dr. Raman over the phone, RN Borbolla administered basic medical

20         care and scheduled plaintiff for x-rays which were taken July 9, 2001.  (Complaint. at

21         5:21-24; Borbolla Declaration at 1:26-28; Raman Declaration at 1:25-27.)

22  3.     On July 10, 2001, after looking at the completed x-rays, Dr. Raman diagnosed plaintiff

23         as having a right ankle sprain and submitted his information to Dr. Smith, an orthopedic

24         consult, for a second opinion.  (Raman Declaration at 1:28-29; Complaint at 5:25-27.)

25  4.     Dr. Smith examined plaintiff on July 19, 2001, and diagnosed him with an Achilles

26  _____

27         [1]These facts are undisputed for the sole purpose of this motion.

28         [2]The Declarations of defendants Borbolla, Solis, Edmond, Smith, Raman and Rodriguez are attached to
    Defendants Separate Statement of Undisputed Facts.  (Court Doc. 36.)

1    tendon rupture.  (Complaint at 6:1-3; Smith Declaration at 1:22-23.)

2    5.    Dr.  Smith performed a right Achilles tendon repair surgery on plaintiff on July 20, 2001.

3          (Complaint  at 6:3-4; Smith Declaration at 1:22-23.)

4    6.    On August 3, 2001, the sutures on plaintiff's would were removed, leaving a hole about

5          ½ inch wide.  (Complaint  at 6:5-8; Defendants Statement of Undisputed Facts at ¶ 6)

6    7.    On August 8 and 9, RN Solis told plaintiff that the wound would heal from the inside out

7          and told him that he was scheduled to see Dr.  Smith.  (Complaint at 6:27-28-7:1-3; Solis

8          Declaration at 1:25-27.)

9    8.    On August 10, 11, and 12, 2001, RN Solis repeated to plaintiff that the wound would heal

10         from the inside out and told him that he was scheduled to see Dr.  Smith.   (Solis

11         Declaration at 1:25-27; Complaint  at 6:26-7:4.)

12   9.    On August 13, 2001, plaintiff returned to the CID and told nursing staff that the pain from

13         his wound was getting worse and that there was some discolored fluid coming from the

14         wound.  RN Edmond looked at the would and said to change the dressing, that the wound

15         was not infected, and that it would heal from the inside out.[3]  (Complaint  at 7:5-11;

16         Edmond Declaration 1:23-27.)

17   10.   On August 14-15, 2001, RN Edmond looked at plaintiff's wound and stated that it was

18         "ok" and told plaintiff that his doctor would be back soon to examine him.[4]  (Complaint

19         at 7:17; Edmond Declaration at 1:28-2:2.)

20   11.   On August 16, 2001, plaintiff went to the CID clinic and informed RN Solis and Borbolla

21         he was HIV infected.  Plaintiff was escorted back to his building.  (Complaint at 7:21-28;

22         Solis Declaration at 2:9-11; Borbolla Declaration 2:21-23)

23

24         [3]Plaintiff indicates in his Opposition to the Motion for Summary Judgment that he "denies" this fact.
     However, it is unclear from his statement exactly why.  Both the Complaint and pertinent declarations agree to the
25   facts as stated above.  See, Complaint at 7:5-11; Edmond Declaration at 1:23-27.

26         [4]Plaintiff challenges this fact on the basis of what he believes were inconsistent statements made by
27   defendant Edmond in her declaration and interrogatories.  However, the Court has reviewed them and finds they are
     not inconsistent.  Moreover both the Declaration and the Complaint agree to the fact defendant Edmond looked at
28   the wound, indicated it was "ok" and that his doctor would be back soon to examine him.  See, Complaint at 7:17;
     Edmond Declaration 1:28-2:2).

12. On August 17, 2001, plaintiff went to the CID clinic on recommendation of Captain Ortiz and Sgt. Busby and spoke to RN Borbolla.[5] (Complaint at 8:10-21; Borbolla Declaration at 2:24-26.)

13. Plaintiff states that he informed RN Borbolla that the wound was larger and that he wanted to see a doctor. RN Borbolla telephoned the emergency room and was told to apply steri-strips. RN Borbolla and RN Solis informed the plaintiff that the wound was not infected and that it would heal from the inside out. (Complaint at ¶ 22, 8:22-28; Borbolla Declaration at 2:24-28; Solis at 2:15-16.)

14. On August 17, 2001, plaintiff was in the clinic to have his dressing changed. RN Solis told him that Dr. Raman was on vacation. (Complaint at 8:1-3; Solis at 2:12-13.)

15. On August 23, 2001, plaintiff slipped and fell in the shower. Plaintiff was sent to the emergency room. RN Borbolla cleaned and dressed the wound. (Complaint at 9:10-13; Raman Declaration at 2:2-5; Borbolla Declaration 3:7-9; Plaintiff's Opposition to Motion for Summary Judgment at 8:13-15.)

16. On August 23, 2001, RN Borbolla diagnosed plaintiff's wound as being infected. (Complaint at 9:16-17; Exh. A to Complaint[6]; Raman Declaration at 2:2-23; Opposition at 8:18-19.)

17. On October 1, 2001, or August 23, 2001, Drs. Raman and Pendleton issued plaintiff a chrono for crutches which would not expire until December 1, 2001. (Complaint at 10:7-10; Raman at 2:3-5; Exh. C to complaint.[7])

18. On August 24, 2001, plaintiff was seen and treated by Dr. Smith. (Smith Declaration at 1, ¶ 4; Complaint at 9:19; Plaintiff's Opposition to Motion at 8:24-25.)

[5]Plaintiff "denies" this allegation on the basis that he declarations from Busby and Ortiz will verify his assertions. However, defendants do not deny that plaintiff visited the clinic per the suggestion of Busby and Ortiz. Thus, these facts are undisputed. (See Complaint at 8:10-21; Borbolla Declaration at 2:24-26.)

[6]Exhibit A is a photocopy of plaintiff's medical record and entry of August 23,2001, wherein Nurse Borbolla indicated that the wound appeared infected.

[7]Exhibit C to the Complaint is a photocopy of the chrono issued October 1, 2001, authorizing plaintiff's crutches.

19.     On October 10, 2001, defendant Rodriguez confiscated plaintiff's crutches.  (Complaint at 10:11-17; Rodriguez Declaration at 1:26-27.)

20.     Plaintiff was seen by Dr.  Smith on October 25, 2001, and surgery scheduled to remove dead skin and scar tissue from the wound.  (Complaint at 11:4; Smith Declaration at 2, ¶¶ 5-6; Plaintiff's Opposition to Motion at 9:22-24.)

21.     Infection of the wound was a known potential consequence of the surgery.  (Smith Declaration at 2, ¶8; Raman Declaration at 2:14-17; Plaintiff's Opposition to Motion at 10:2.)

**E. ANALYSIS**

    **1.  Eighth Amendment Claim**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir.2000).

To establish an Eighth Amendment violation, a prisoner "must satisfy both the objective and subjective components of a two-part test." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.2002) (citation omitted).  The objective component is the existence of a "sufficiently serious" risk to an inmates' health or safety; the subjective component is that awareness of facts from which the risk could be inferred and actually drawing that inference.  Farmer v. Brennen, 511 U.S. 825, 826-27, 114 S.Ct. 1970 (1994) (citation omitted).

"[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Lolli v.  County of Orange, 351 F.3d 410, 419 (9th Cir.  2003) (internal quotation omitted.)  Mere negligence is insufficient for liability. Clement v.  Gomez, 298 F.3d 898, 904 (9th Cir.  2002).  Rather, the prisoner must show that the course of treatment undertaken, or a lack of treatment, was medically unacceptable under the circumstances, and the defendants chose this course is conscious disregard of an excessive risk to plaintiff's health. Kackson v.  McIntosh, 90 F.3d 330, 332 (9th Cir.), cert.  denied, 519 U.S. 1029 (1996.)  A difference of opinion does not establish

1  deliberate indifference.  Id.

2             ***a.  Defendants Borbolla, Solis, Edmond***

3         In this case, defendants provide ample evidence that plaintiff received constitutionally

4  adequate treatment for his post-surgical wound.  First, defendants provide evidence that

5  plaintiff's post surgical wound was the type that was allowed to heal without being completely

6  closed and that such a wound would not have been exposed but would have been medicated and

7  covered with a dressing. (Raman Declaration at 2.)  In addition, infection of the wound was a

8  known potential consequence of surgery.  (Smith Declaration at 2, ¶8; Raman Declaration at

9  2:14-17; Plaintiff's Opposition to Motion for Summary Judgment at 10:2.)

10         It is further undisputed that those times when plaintiff presented to the CID clinic stating

11  that he believed he had an infection, he was examined, the wound was cleaned, the dressing

12  changed, plaintiff was informed that the wound was the type that would remain open, and that

13  there were no signs of infection and that the wound was not infected. (Complaint at 6:27-28, 7:1-

14  3, 7:5-11, 7:17,  ¶ 22, 8:22-28; Solis Declaration at 2:15-17; Borbolla Declaration at 2:28-28;

15  Edmond Declaration at 1:25-27;2:4-6.)

16         Accordingly, based on the above, defendants have sufficiently demonstrated an absence

17  of a disputed issue of fact.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

18  (1986).  The burden now shifts to plaintiff.  Id.

19         Summary judgment law prohibits plaintiff from resting either on pleadings or on

20  conclusory allegations once the defendant submits declarations supporting his motion; instead,

21  the law requires plaintiff to set forth specific facts showing there is a genuine issue for trial.

22  Hutchinson v. United States, 838 F.2d 390, 392-93 (9th Cir. 1988).  These facts should be in the

23  form of affidavits, depositions, answers to interrogatories, admissions on file, or other probative

24  evidence.[8]  See Celotex, 477 U.S. at 324.

25  _____

26      [8]At one point, plaintiff refers to the defendant's Edmond interrogatory in which she states that on one or two
occasions when she examined plaintiff, she advised that his would need to be evaluated by a physician.  (Opposition

27  at 24, citing Exh.  C, Response #2 (3).)  However, this does not assist plaintiff as the interrogatory asks Edmond to
"state the duties of Mrs.  Edmond, CID Nurse insofar as they pertain to providing medical care to prisoners infected

28  with HIV/AIDS, who sustain an open wound injury that becomes infected ..." (Exh.  C to Opposition at
Interrogatory No.  2(3).)  The question is general and does not ask specifically how Nurse Edmond treated plaintiff

1    In this case, plaintiff offers no evidence to dispute the fact that he was given adequate

2  care for his post-surgical wound.  See Hutchinson v. United States, 838 F.2d 390, 392 (9th

3  Cir.1988) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Plaintiff repeatedly argues

4  that he "believed" his ankle was infected, however, there is no evidence to support this.

5  Moreover, plaintiff's allegations that his infection was the result of defendant's actions, or lack

6  thereof, is wholly unsupported.   There is no evidence in the record that prior to August 23, 2001,

7  plaintiff actually had an infection, defendants knew he had an infection and that they disregarded

8  that fact.

9    Plaintiff's insistence that the infection existed each time the nurses examined him and

10  concluded the contrary prior to August 23, 2001, is, at best, a disagreement with the diagnosis.

11  Such circumstances, however, do not give rise to a claim under section 1983.  See, Sanchez v.

12  Vild, 891 F.2d 240, 242 (9th Cir.1989) (difference of medical opinion as to the need to pursue one

13  course of treatment over another is insufficient, as a matter of law, to establish deliberate

14  indifference); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.1981) ("A difference of opinion

15  between a prisoner-patient and prison medical authorities regarding treatment does not give rise

16  to a § 1983 claim.");  Mayfield v.  Craven, 433 F.2d 873, 874 (9th Cir.  1970).

17    Construing the allegations in the light most favorable to plaintiff, the Court concludes

18  that plaintiff has failed to demonstrate that defendants violated his constitutional rights. The

19  evidence before the Court indicates that defendants did not disregard an excessive risk to

20  plaintiff's health or safety, and, although plaintiff may believe that defendants did not correctly

21  diagnose the state of his wound, this is insufficient to support a conclusion that defendants have

22  intentionally denied, delayed, or interfered with his medical treatment.  Accordingly, plaintiff has

23  failed to set forth specific facts showing that there is a genuine issue for trial.  Defendants

24  Borbolla, Solis and Edmond are therefore, entitled to summary judgment on this claim.

25    **b.  Defendant Rodriguez**

26    Defendants argue that defendant Rodriguez was not deliberately indifferent to plaintiff's

27

28  on the days in question.  Thus, the response is insufficient to controvert defendants contention that she did not know of and disregard a serious risk to plaintiff's health and safety.

1   need because he was simply following Nurse's orders to confiscate plaintiff's crutches.  (Motion

2   for Summary Judgment at   )  Defendant Rodriguez states that he was ordered to take the crutches

3   away from plaintiff because he did not need them anymore, and did not have authorization for

4   them.  (Rodriguez Declaration at ¶ 3.)

5       Plaintiff contends that on October 10, 2001, when defendant Rodriguez arrived to

6   confiscate the crutches, plaintiff informed him that a chrono reinstating his possession of the

7   crutches was issued, was good until December, and that he could not walk without them.

8   (Complaint at 10:13-15.)  Plaintiff further states that defendant Rodriguez could have looked into

9   the issuance of the chrono but instead, took the crutches away from him.  (Opposition at 14:11-

10  14.)

11      Defendant's Reply states again that defendant acted reasonably under the circumstances.

12  Although defendants cite to Statement of Undisputed Fact No.  18, however, this fact only

13  provides that it is undisputed that defendant Rodriguez took the crutches away from plaintiff.

14  Such a fact, however, is insufficient to rebut plaintiff's evidence that defendant Rodriguez knew

15  of his medical need for the crutches and disregarded that need by confiscating them.

16      Because plaintiff informed defendant Rodriguez of his medical need for crutches and the

17  crutches were confiscated, the Court concludes that there exists a genuine issue of material fact

18  as to defendant Rodriguez' deliberate indifference to plaintiff's medical need for the crutches.

19  Accordingly, judgment as a matter of law on plaintiff's Eighth Amendment claim against

20  defendant Rodriguez should be denied.

21      **2.  Qualified Immunity**

22      Government officials enjoy qualified immunity from civil damages unless their conduct

23  violates "clearly established statutory or constitutional rights of which a reasonable person would

24  have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In ruling upon the issue of

25  qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party

26  asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right.

27  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If, and only if, a violation can be made out, the court

28  will consider whether the rights of the prisoners in this case were clearly established at the time

1    of incident. Id.  The proper inquiry focuses on whether "it would be clear to a reasonable officer

2    that his conduct was unlawful in the situation he confronted," see id.  at 202.  "This inquiry, it is

3    vital to note, must be undertaken in light of the specific context of the case." Id.  at 201.

4    Specificity only requires that the unlawfulness be apparent under preexisting law. Anderson v.

5    Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).

6                     ***a. Defendants Borbolla, Solis and Edmond***

7           As the Court has found summary judgment appropriate for defendants Borbolla, Solis and

8    Edmond, it will not address the issue of qualified immunity.

9                     ***b. Defendant Rodriguez***

10          Having found deliberate indifference on the part of Defendant Rodriguez, the first prong

11   of the qualified immunity inquiry set forth in Saucier has been met.  Saucier, 533 U.S. at 201.

12          The next step under Saucier is to consider whether the contours of the right were clearly

13   established, an inquiry that "must be undertaken in light of the specific context of the case, not as

14   a broad general proposition." Saucier, 533 U.S. at 201.  The undisputed facts are critical because

15   one must have a specific set of facts in mind to which to apply the law.

16          As is evident in the "Background" section above, the undisputed evidence is that

17   defendant Rodriguez confiscated the crutches from plaintiff on October 10, 2001.  (Undisputed

18   Fact No.  19.)  Defendant Rodriguez states that he was asked by Nurse Edmond to take

19   plaintiff's crutches away from him because he "did not need them anymore [and] that he did not

20   have a doctor's order for them . ." (Rodriguez Declaration at 1-2, ¶3.)  While defendant

21   Rodriguez might have inquired into the existence of the chrono as claimed by plaintiff, he was

22   presented with conflicting information that such authorization did not exist per Nurse Edmond's

23   instructions.  The Eighth Amendment right to be free from deliberate indifference to serious

24   medical needs was well established in 2001 by Estelle v.  Gamble, 429 U.S. 97, 105-106, 97

25   S.Ct.  285 (1976). However,  it was also clearly established that a prison official is deliberately

26   indifferent for interfering with medical treatment.  Wakefield v. Thompson, 177 F.3d 1160, 1165

27   (9th Cir.1999); Tolbert v.  Eyman, 434 F.2d 625 (9th Cir.  1970).  Thus, under the circumstances,

28   a reasonable prison official in the position of defendant would not have been aware that his

1   confiscation of plaintiff's crutches would have been unlawful.  <u>Saucier</u>, 533 U.S. at 202;  <u>Estate</u>

2   <u>of Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1051 (9th Cir. 2002).  Accordingly, the Court will

3   recommend that defendant Rodriguez be found immune from liability and that summary

4   judgment be granted in his favor.

5   <u>F.  RECOMMENDATION</u>

6            Accordingly, the Court RECOMMENDS that the Motion for Summary Judgment against

7   defendants Borbolla, Solis and Edmond be GRANTED and that the Motion be GRANTED on

8   qualified immunity grounds in favor of defendant Rodriguez.

9            The Court HEREBY ORDERS that these Findings and Recommendations be submitted

10  to the United States District Court Judge assigned to this action pursuant to the provisions of 28

11  U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States

12  District Court, Eastern District of California.  Within THIRTY (30) days after being served with

13  a copy of these Findings and Recommendations, any party may file written Objections with the

14  Court and serve a copy on all parties.  Such a document should be captioned "Objections to

15  Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served

16  and filed within TEN (10) <u>court</u> days (plus three days if served by mail) after service of the

17  Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C.

18  § 636 (b)(1)(C).  The parties are advised that failure to file Objections within the specified time

19  may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153

20  (9th Cir. 1991).

21  IT IS SO ORDERED.

22  **Dated:    April 25, 2005**              **_/s/ Lawrence J. O'Neill_**
    b9ed48                                    UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28